**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SUNTERRA DISTRIBUTION, LLC, | § | |
| Plaintiff, | § | |
| vs. | § | **Civil Action No. 3:18-CV-2783-S** |
| | § | |
| CASTROS DISTRIBUTION LLC, a/k/a | § | |
| CASTRO PRODUCE, and DIMAS | § | |
| CASTRO, individually, | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By electronic order of reference dated December 28, 2018 (doc. 14), before the Court is *Plaintiffs' Motion for Default Judgment Against Defendants,* filed December 27, 2018 (doc. 13). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On October 18, 2018, Sunterra Distribution, LLC (Plaintiff) sued Castros Distribution LLC, a/k/a Castro Produce (Company), and Dimas Castro (Owner) (collectively, Defendants) to recover $30,386.35 owed under multiple contracts, as well as "prejudgment interest and contractually due costs of collection," and attorneys' fees. (doc. 1 at 1-11.)[1]

Plaintiff is a buyer and seller of produce that "the United States Department of Agriculture (USDA) expressly recognize[s] as commodities covered under the provisions of the Perishable Agricultural Commodities Act" (PACA), and Company buys and sells produce in wholesale quantities. (*Id*. at 2-3.) From June 8, 2017 to July 12, 2017, Plaintiff and Company "entered into several written contracts of sale, which are evidenced by invoices" that total $30,386.35, for the sale of produce from Plaintiff to Company. (*Id*. at 4; docs. 1-2-1-4.) Each invoice included the

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

following provision:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(doc. 1 at 6; docs. 1-2-1-4.) It also provided that Plaintiff would "be entitled to collect reasonable attorneys' fees and expenses as part of an action to collect on [the] invoice." (*Id*.) Plaintiff contends that it delivered produce of "the kind, quality, grade, and size" of produce requested in the invoices to Company, and although Company "agreed to remit payment to Plaintiff within 10 days of the product's arrival," it "has since failed to pay the agreed purchase price . . . ." (doc. 1 at 5.)

On April 17, 2018, Plaintiff filed a formal PACA complaint against Company with the USDA before the Secretary of Agriculture due to its failure to pay promptly, and Company failed to answer. (*Id*.; doc. 1-5 at 2-3.)[2] On July 20, 2018, the Secretary of Agriculture issued a default order (the Order) adopting the facts alleged in the PACA complaint, and ordering Company to pay Plaintiff "$30,386.35 with interest at the rate of 18% per annum (1.5% per month) from August 1, 2017 until the date of [the] Order, plus interest at the rate of 2.3% per annum on the amount of $30,386.35, from the date of [the] Order, until paid, plus the amount of $500" for the handling fee Plaintiff incurred in pursuing the PACA complaint. (docs. 1 at 5-6; 1-6 at 3-5.)

Plaintiff filed this action under 7 U.S.C. § 499g(b) to enforce the Order. (*Id*. at 7-8.) It also asserts a claim for breach of fiduciary duty against Defendants. (*Id*. at 8-9.) Summonses were issued for Defendants on October 19, 2018. (doc. 4.) On November 6, 2018, Plaintiff moved for

---

[2] The factual allegations alleged in the PACA complaint are similar to those in Plaintiff's complaint in this case. (*See* doc. 1-5 at 2-3.)

substituted service on each Defendant, which was ordered. (*See* docs. 5-8.) On December 20, 2018, it filed affidavits of service reflecting that Owner was served on November 10, 2018, and Company was served on November 14, 2018. (docs. 9-10.) Defendants failed to answer or respond to the complaint, and Plaintiff sought entry of default, which the Clerk of Court entered on December 21, 2018. (docs. 11-12.)

## II. MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (doc. 13.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Defendants have failed to plead or otherwise defend, and Plaintiff has obtained an entry of default on them, the first two requisites for a default judgment have been met. (docs. 9-10, 12.) Remaining for determination is whether a default judgment is warranted.

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the

defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam). The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

In determining whether the entry of a default judgment is appropriate, courts look to whether default judgment is procedurally warranted, whether the award is supported by a sufficient factual basis in the plaintiff's live complaint, and whether the specific amount of damages can be determined with "mathematical calculation by reference to information in the pleadings and supporting documents." *Ramsey v. Delray Capital LLC*, No. 3:14-CV-3910-B, 2016 WL 1701966, at *3 (N.D. Tex. Apr. 28, 2016) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

## A.    Procedural Requirements

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the

amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Plaintiff seeks a judgment for the amount Defendants owe under the parties' various contracts, as well as pre-judgment and post-judgment interest, the PACA complaint handling fee, attorney's fees and court costs. (doc. 13 at 14-15.) Attached to its motion are copies of a military service affidavit and a status report from the Department of Defense-Manpower Data Center showing that Owner is not in the military. (doc. 13-1.) Also attached is an affidavit from its attorney (Attorney Affidavit) describing the worked performed and the hourly rates of attorneys that worked on the case, and stating that the fees and expenses requested in the motion were reasonable. (doc. 13-2.) It also submitted a supplemental affidavit from its attorney (Supplemental Affidavit) and billing invoices showing the work performed, attorney hourly rates, and amount of attorneys' fees incurred, an affidavit from its representative (Representative Affidavit) restating the allegations in the complaint, Defendants' complete billing statement showing a remaining principal balance of $30,386.35, multiple invoices reflecting Defendants' orders and the amount owed to Plaintiff for each order, and the Order from the Secretary of Agriculture showing that Company was ordered to pay Plaintiff the amount owed on the orders, interest, and the PACA complaint filing fee. (*See* docs.

19; 19-1; 20; 20-2; 20-3; 20-4.)

Regarding the first factor, $30,386.35 is not a relatively substantial amount of money. *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016). Under the second factor, there is a public interest in the enforcement of contracts. *Johnson Serv. Group, Inc. v. Olivia France*, 763 F. Supp. 2d 819, 831 (N.D. Tex. 2011) (quoting *AmeriSpec, Inc. v. Metro Inspection Servs., Inc.*, No. 3:01-CV-0946-D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001)) ("'it is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]'" (alteration in original)). Although Defendants' default appears to be technical in nature, which is the third factor, Plaintiff is prejudiced and harmed by their continued delay to respond in this case, which is the fourth factor. *See U.S. v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendants have received ample notice of this action and sufficient time to respond. *See Lindsey*, 161 F.3d at 893. The seventh, eighth, and ninth factors similarly favor default judgment because Defendants have not offered any evidence that their failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default.

Additionally, no material issues of fact have been placed in dispute due to Defendants' failure to respond to the complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he

6

defendant, by his default, admits the plaintiff's well pleaded allegations of fact").  Because Defendants were properly served with the complaint and failed to answer or otherwise defend, the grounds for default judgment are clearly established. (docs. 9-10.)  Accordingly, the procedural requirements for a default judgment are satisfied.  *See Ramsey*, 2016 WL 1701966, at *3.

**B.**     <u>**Entitlement to Judgment**</u>

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true."  *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).  "There must be a sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Only well-pleaded facts, not conclusions of law, are presumed to be true.  *Id*.

In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8."  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015).  Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required.  *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This "low threshold" is less rigorous than that under Rule 12(b)(6).  *Id*. at 498.  Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context."  *Id*. at 498 n.3.

1. **PACA**

Plaintiff first seeks to enforce the Order entered by the Secretary of Agriculture under 7 U.S.C. § 499g(b) due to Defendants' failure to pay promptly and "properly protect the PACA [t]rust [a]ssets" in violation of the PACA. (docs. 1 at 7-8; 13 at 7-11.)

"In 1930, Congress enacted PACA to regulate the sale of perishable agricultural commodities in interstate commerce." *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *3 (N.D. Tex. July 18, 2019) (citing *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1066 (2d Cir. 1995)). "[P]erishable agricultural commodities" are defined as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4). The "PACA requires all commission merchants, dealers, and brokers in perishable agricultural commodities to be licensed," and it prohibits them "from engaging in certain unfair trade practices, including a failure to pay promptly." *Id.* at § 499b(4); *Paisano Capital*, 2019 WL 3239152, at *3 (citing 7 U.S.C. § 499b(4)); *see Matter of Delta Produce, L.P.*, 845 F.3d 609, 612 (5th Cir. 2016). If a commission merchant, dealer, or broker fails to "make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had," they "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. §§ 499b(4), 499e(a).

Congress strengthened the PACA's protections in 1984 to require produce buyers "to hold either the produce or all proceeds or accounts receivable from a subsequent sale of produce in trust for the benefit of unpaid sellers until 'full payment of the sums owing in connection with the transactions has been received by' the supplier." *Matter of Delta Produce*, 845 F.3d at 612–13 (citing 7 U.S.C. § 499e(c)(2)); *see Paisano Capital*, 2019 WL 3239152, at *3–4. The trust is created

automatically "when the dealer accepts the goods so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f)."[3] *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (citation omitted); *Paisano Capital*, 2019 WL 3239152, at *4 (citing 7 U.S.C. § 499e(c)(2)). A buyer may be held liable if it fails to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations" to its suppliers. 7 C.F.R. § 46.46(d)(1). "Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful" and subjects the dealer to liability. *Id.* The trust rights created by the PACA "take priority over the interests of all other creditors, including secured creditors." *Patterson Frozen Foods*, 307 F.3d at 669; *see Matter of Delta Produce*, 845 F.3d at 613 (citing cases).

Liability under the PACA "may be enforced either by (1) complaint to the Secretary [of Agriculture] . . . , or (2) by suit in any court of competent jurisdiction . . . ." 7 U.S.C. at §§ 499e(b), 499f(a); *see Patterson Frozen Foods*, 307 F.3d at 669. When a complaint is filed with the Secretary of Agriculture and "the party complained against" fails to timely answer a duly served complaint, the Secretary must determine if that party violated any provision of the PACA. *See* 7 U.S.C. § 499g(a). After making a determination, the Secretary is required to determine the amount of damages to which the complainant is entitled, and to "make an order directing the offender to pay to such person complaining such amount on or before the date fixed in the order." *Id.* If a dealer

---

[3] Suppliers must provide "written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker . . . ," and the written notice must "set forth information in sufficient detail to identify the transaction subject to the trust." 7 U.S.C. § 499e(c)(3). A supplier may also preserve the benefits of the trust with "ordinary and usual billing or invoice statements to provide notice of the . . . intent to preserve the trust," but the billing or invoice statement must contain on its face the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." *Id.* at § 499e(c)(4).

9

fails to "pay the reparation award within the time specified in the Secretary's order, the complainant, . . . may within three years of the date of the order file" an action in federal court, and "[s]uch suit . . . shall proceed in all respects like other civil suits for damages, except that the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court . . . ." *Id*. at § 499g(b). A prevailing complainant is entitled to recover reasonable attorneys' fees, "to be taxed and collected as part of the costs of suit." *Id*.

To state a claim for relief under the PACA, a "[p]laintiff must establish that it is a trust beneficiary, and that a PACA trust was formed." *Paisano Capital*, 2019 WL 3239152, at *4. There are five elements to meet this burden:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

*Id*. (citing 7 U.S.C. § 499e); *see Paris Foods Corp. v. SFI Holdings, Inc.*, No. 3:12-CV-3261-B, 2013 WL 12124514, at *5 (N.D. Tex. June 28, 2013); *see also Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd., Inc.*, No. SA-11-CA-1126-XR, 2011 WL 6938450, at *3 (W.D. Tex. Dec. 30, 2011) (identifying allegations supporting a PACA claim); *Ideal Sales, Inc. v. Taylor Farms Tex., Inc.*, No. 3:06-CV-1512-G, 2007 WL 1599143, at *2–3 (N.D. Tex. 2007) (same).

Here, Plaintiff's complaint alleges that it sold perishable agricultural commodities to Company, a licensed "dealer" and "broker" as defined in the PACA, and that all transactions occurred in interstate and foreign commerce. (doc. 1 at 2-5.) It alleges that it has not received any payment for the multiple transactions between it and Company, and that it preserved its trust rights by including the required statutory language giving written notice to Defendants. *Id*. at 5-7.)

Plaintiff proffers copies of invoices and an overall billing statement reflecting the transactions for perishable agricultural commodities between it and Company, and showing a remaining principal balance of $30,386.35. (*See* docs. 1-2; 1-3; 1-4; 20-1; 20-2.) The invoices specifically provide that the perishable agricultural commodities "are sold subject to the statutory trust" authorized under the PACA, and they include the required statutory language. (*See id*.) Plaintiff's allegations and evidence demonstrate "that it sold [Company] . . . [$30,386.35] worth of produce for which it has not been paid." *Rio Bravo Produce*, 2011 WL 6938450, at *3. They also show that the necessary notice requirements have been met to preserve Plaintiff's PACA trust benefits because the invoices contain the required statutory language. *See id*.; *Ideal Sales*, 2007 WL 1599143, at *3; *see also* 7 U.S.C. §§ 499e(c)(3)–(4).

Plaintiff also provided a copy of the Order in its favor from the Secretary of Agriculture, which provides that it sought reparations from Company, a licensed party under the PACA, "in connection with a transaction or transactions involving . . . perishable agricultural commodities in interstate or foreign commerce." (doc. 20-3 at 4.) The Order concludes that Company violated the PACA by failing to pay the amount owed to Plaintiff. (*Id*. at 4-5.) The facts contained in the Order are "prima-facie evidence" in further support of Plaintiff's claim. 7 U.S.C. § 499g(b).

Accordingly, Plaintiff has alleged sufficient facts to meet the elements to support its claim under the PACA, and there is a sufficient basis in the pleadings for recovery of the amount awarded in the Order of the Secretary of Agriculture. *See Paris Foods Corp.*, 2013 WL 12124514, at *5 (determining that the plaintiff was entitled to a default judgment because it sufficiently alleged the elements of a PACA claim); *Ideal Sales*, 2007 WL 1599143, at *3 (denying motion to dismiss where allegations were sufficient to support a claim under the PACA); *see also Mrs. Condies Salad Co.*,

*Inc. v. Colorado Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1219 (D. Col. 2012) (finding that default judgment should be entered against the defendant on the plaintiff's PACA claim where the plaintiff sued to enforce an order of the Secretary of Agriculture).

### 2. *Breach of Fiduciary Duty*

Plaintiff also alleges that Owner "breached his fiduciary duty owing to Plaintiff under the PACA trust." (docs. 1 at 8-10; 13 at 11-13.)[4]

As noted, the PACA requires produce buyers to maintain a trust for "the produce or all proceeds or accounts receivable" from the sale of the produce "for the benefit of unpaid sellers" until full payment is made. *Matter of Delta Produce*, 845 F.3d at 612–13 (citing 7 U.S.C. § 499e(c)(2); *see Paisano Capital*, 2019 WL 3239152, at *3–4. "The buyer, as trustee, has a fiduciary duty under law to maintain the trust assets at sufficient levels to ensure full payment to sellers, who are the trust beneficiaries," and a buyer may be held liable for failure to properly maintain trust assets. *Hardie's Fruit & Vegetable Co., LP v. BIMC, LP*, No. 3:18-CV-1454-D, 2018 WL 3302733, at *2; *see* 7 C.F.R. § 46.46(d)(1).

"PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities." *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (citing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)). Where the "assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id*. The Fifth Circuit has expressly

---

[4] Although Plaintiff appears to assert this claim against both Company and Owner, its allegations relate only to Owner's liability for Company's alleged acts. (*See* docs. 1 at 8-10; 13 at 11-13.)

recognized that "individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA" *Id*. While the fact that a company goes out of business or files for bankruptcy shows an insufficiency of assets to satisfy PACA liability, "[o]ther acts exhibiting a company's inability to pay or an officer's unwillingness to fulfill his duties can also constitute a breach; such acts include the failure to timely pay an invoice." *Ideal Sales*, 2007 WL 1599143, at *3 (citing *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 860–61 (S.D.N.Y. 1995)); *see Golman-Hayden*, 217 F.3d at 351–52; *Sunkist Growers*, 104 F.3d at 281–83. The fact that others may be secondarily liable "does not preclude an injured party from seeking relief from officers and directors in the same action in which it seeks to establish primary liability for the corporation." *Ideal Sales*, 2007 WL 1599143, at *3 (citing *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 423–24 (3rd Cir. 2005)).

Here, Plaintiff alleges in its complaint that Owner is an "officer, director, owner or member" of Company, and that he had a statutory duty to ensure that Company performed all duties arising out of its transactions with Plaintiff. (doc. 1 at 9.) It further alleges that Owner "was in position to exercise judgment, discretion or control over" Company's operations and its financial dealings, and that Owner "knew or should have known of [Company's] failure to promptly account to and pay Plaintiff for each shipment of [p]roduce" Company received from Plaintiff. (*Id*.) It concludes that because Owner controlled or was in position to control Company, "and Plaintiff has not been paid pursuant to the terms of the [i]nvoices," Owner "has breached his fiduciary duties owing to Plaintiff" by Defendants under the PACA. (*Id*. at 10.) As discussed above, Plaintiff also provided copies of invoices and a billing statement, which contained the required statutory language to sufficiently preserve its PACA trust benefits, and showed a remaining balance of $30,386.35 due to the failure

to timely pay the multiple invoices.  (*See* docs. 1-2-1-4; 20-1-20-2.)

Plaintiff's allegations that Defendants failed to timely pay the amounts owed under the multiple invoices sufficiently demonstrate Company's lack of assets to satisfy its liability under the PACA.  *See Ideal Sales*, 2007 WL 1599143, at *3.  Plaintiff has also sufficiently alleged that Owner, through his operation and control of Company, breached his "fiduciary duty by failing to maintain a PACA trust and by failing to pay . . . [P]laintiff in a timely manner."  *Id.* at 4.  Owners "refusal or failure to exercise any appreciable oversight of the corporation's management was a breach of his fiduciary duty to preserve the trust assets," and because Plaintiff preserved its trust rights under the PACA, Owner may also be held personally liable for the $30,386.35 that remains owed.  *Golman-Hayden*, 217 F.3d at 351–52.  Plaintiff has therefore provided a sufficient basis in the pleadings for recovering against Defendants for breach of fiduciary duty under the PACA.  *See Ideal Sales*, 2007 WL 1599143, at *4.

## C.    Entitlement to Damages

Plaintiff's motion for default judgment seeks to recover the $30,386.35 owed under the invoices, the filing fee incurred in filing the PACA complaint, pre-judgment and post-judgment interest, attorneys' fees, and court costs.  (docs. 13 at 14-15; 13-3 at 2.)

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975).  While Plaintiff's motion and complaint both request the amount owed under the invoices, the filing fee, pre-judgment interest, attorneys' fees, and court costs, its complaint did not request post-judgment interest.  (docs. 1; 13 at 14-15; 13-3 at 2.)  Although post-judgment interest is requested

14

for the first time in its motion for default, it may still be considered as available relief. *Dontos v. Vendomation NZ Ltd.*, No. 3:11-CV-553-K, 2015 WL 5311094, at *7 (N.D. Tex. Aug. 24, 2015) (citing *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594–95 (5th Cir. 2006)), *adopted by* 2015 WL 5319817 (N.D. Tex. Sept. 10, 2015). Because the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, and the request for post-judgment interest may be properly considered, the only remaining issue is whether the relief requested is appropriate based on the governing law. *Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009); *see Dontos*, 2015 WL 5311094, at *7.

While damages on a default judgment are normally not awarded without a hearing or a demonstration by detailed affidavits, a hearing is unnecessary if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *Future World Elecs., LLC v. Over Drive Marketing, LLC*, No. 3:12-CV-2124-B, 2013 WL 5925089, at *3 (N.D. Tex. Nov. 5, 2013) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). The burden is on the plaintiff to provide an evidentiary basis for the damages it seeks. *Broad. Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).

## 1.    *Principal Amount Owed*

Plaintiff first requests recovery of the $30,386.35 principal balance it is owed under the invoices. (doc. 13 at 14-15.)

The PACA provides that "any commission merchant, dealer, or broker" that violates the PACA, "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). "Courts have found that copies

of contracts, invoices, purchase orders, emails with payment details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for damages." *Paisano Capital*, 2019 WL 3239152, at *4 (citing cases); *see Genesis Servs., Inc. v. Screens Plus, Inc.*, No. 6:16-CV-00613, 2016 WL 7036791, at *6 (W.D. La. Nov. 7, 2016) (holding that copies of invoices and affidavits were sufficient evidence to mathematically calculate damages); *Jetstream of Houston, L.L.P. v. Cajun Pressure Control, L.L.P.*, No. 15-2559, 2016 WL 3024751, at *4 (W.D. La. Apr. 15, 2016) (holding that affidavits, copies of contracts, and invoices were enough evidence to show entitlement to damages).

Here, Plaintiff requests $30,386.35 in damages due to Defendants' failure to pay the principal amount owed under the invoices. (docs. 13 at 11-12, 14; 13-3 at 2.) It provided the invoices detailing the transactions between it and Company, as well as a billing statement showing Defendants' remaining principal balance of $30,386.35. (*See* docs. 1-2; 1-3;1-4; 20-1; 20-2.) It also provided affidavits from its president and attorney affirming the remaining principal balance, as well as the Order from the Secretary of Agriculture specifically ordering Company to pay Plaintiff the full amount of the remaining principal balance. (docs. 13-2 at 3; 20 at 6-7; 20-3 at 6.) These documents establish that the principal balance of $30,386.35 remains unpaid, and a hearing is unnecessary because the amount of damages are "ascertainable from the . . . motion, or the evidence attached thereto, or otherwise capable of mathematical calculation." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-2589-M-BN, 2016 WL 2856006, at *2 (N.D. Tex. Apr. 18, 2016) (citing *James*, 6 F.3d at 310; *Crawford v. Lee*, No. 3:10-CV-1499-L, 2011 WL 2115824, at *4 (N.D. Tex. May 24, 2011)), *adopted by* 2016 WL 2853565 (N.D. Tex. May 13, 2016).

Based on Plaintiff's complaint, default motion, and attached evidence, it has shown that it

is entitled to recover damages in the amount of $30,386.35 based on Defendants' failure to pay the principal amount owed under the invoices. *See Paisano Capital*, 2019 WL 3239152, at *5 (finding that the plaintiff was entitled to recover the amount of damages owed to it based on "copies of invoices showing the amount of produce delivered and the total amounts owed . . . ."); *Paris Foods Corp.*, 2013 WL 12124514, at *5 (awarding damages on default for violations of "PACA's prompt payment and trust requirements.").

### 2. *PACA Complaint Filing Fee*

Plaintiff also requests $500 for the handling fee it incurred in filing its PACA complaint with the Secretary of Agriculture. (doc. 13 at 15.) As noted, those who violate the PACA are liable for all damages "sustained in consequence of such violation. 7 U.S.C. § 499e(a). These damages include the costs for "any handling fee paid by the injured person or persons under section 499f(a)(2) . . . ." *Id.* at §§ 499e(a), 499f(a)(2). Plaintiff has alleged in its complaint and motion for default judgment that it incurred the $500 handling fee to file its PACA complaint with the Secretary of Agriculture, and it provided the Secretary's Order, which specifically awarded it the handling fee based on 7 U.S.C. § 499e(a). (docs. 1 at 6; 13 at 8, 15; 20-3 at 6.) Accordingly, Plaintiff has sufficiently shown that it is entitled to recover the $500 handling fee paid for filing the PACA complaint, and it should be awarded that amount. *See C.H. Robinson Worldwide, Inc. v. Joseph Aiello & Sons, Inc.*, No. 1:15-CV-1321 (GTS/DJS), 2016 WL 4076964, at *5 (N.D.N.Y. Aug. 1, 2016) (awarding $500 fee for filing PACA claim based on Secretary's default order); *Mrs. Condies Salad Co., Inc.*, 858 F. Supp. 2d at 1216 n.1, 1221 (same).

### 3. *Pre-Judgment Interest*

Plaintiff next seeks pre-judgment interest on the principal amount "at the rate of 18% per

annum ($15.00 per diem), from August 1, 2017 until July 20, 2018" amounting to $5,298.72, and prejudgment interest at "a rate of 2.3% per annum ($1.91 per diem)" on the principal amount from July 20, 2018 until judgment is entered in this action. (docs. 13 at 14-15; 13-3 at 2.)

The "PACA itself does not expressly provide for the award of prejudgment interest," but district courts have 'broad discretion to award discretionary prejudgment interest to PACA claimants under 7 U.S.C. § 499e(c)(2).'" *Baker Packing Co. v. Produce Fresh, Inc.*, No. SA-10-CV-663-XR, 2011 WL 1327627, at *3 (W.D. Tex. Apr. 6, 2011). Courts "have relied upon the language in 7 U.S.C. § 499e(c)(2) to allow a PACA claimant to recover . . . prejudgment interest" if provided for by contract. *Eagle Eye Distrib., Inc. v. Ben Parker, Inc.*, No. 3:09-CV-0095-L, 2009 WL 4251105, at *7 (N.D. Tex. Nov. 25, 2009) (citing cases); *see Ideal Sales, Inc. v. McGriff*, No. 3:95-CV-0991-R, 1997 WL 148043, at *5 (N.D. Tex. Mar. 26, 1997) (citing *Okun v. Zimmerman*, 814 F. Supp. 346, 349–50 (S.D.N.Y. 1993) (recognizing that invoices containing provisions for the payment of interest were enforceable as bargained for portions of a contract). When the contract is evidenced by an invoice, "[c]ourts often look to [the] invoices when fixing prejudgment interest." *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 351 (5th Cir. 2015) (citing cases). Additionally, as noted, the findings and orders of the Secretary of Agriculture are "prima-facie evidence of the facts therein stated. . . . ." 7 U.S.C. § 499g(b); *see Sierra Kiwi, Inc. v. Rui Wen, Inc.*, No. 2:16-CV-1334-LKK-EFB, 2013 WL 5955066, at *5 (E.D. Cal. Nov. 7, 2013) (relying on the Secretary's default order to award pre-judgment interest); *Mrs. Condies Salad Co., Inc.*, 858 F. Supp. 2d at 1220 (same).

Here, Plaintiff provides copies of the invoices, which specifically state that "[i]nterest shall accrue on any past-due account balance at the rate of 1.5% per month (18% per annum)." (*See* docs.

1-2; 1-3; 1-4; 20-1; 20-2.)  It also provides a copy of the Order from the Secretary of Agriculture, which specifically awarded it pre-judgment interest on the principal amount owed at the same rate stated in the invoices from August 1, 2017 until July 20, 2018 because "the interest charge provisions on [Plaintiff's] invoice(s) were incorporated into each sales contract."  (doc. 20-3 at 5-6.) The Order further provided that Plaintiff was entitled to "interest at a rate of 2.3% per annum" on the principal amount from the date the Order was entered.  (*Id*.)  The documents provided by Plaintiff in support of its motion are sufficient to support its request for prejudgment interest.  *See Offshore Marine Contractors, Inc., L.L.C.*, 779 F.3d at 351 (determining that the district court did not abuse its discretion in relying on invoices to award pre-judgment interest); *Mrs. Condies Salad Co., Inc.*, 858 F. Supp. 2d at 1219 (finding that the plaintiff was entitled to recover interest based on the rate specified by the Secretary in its order).

Accordingly, Plaintiff it should be awarded prejudgment interest at a rate of 18% per annum from August 1, 2017 to July 20, 2018, amounting to $5,298.72, as well as pre-judgment interest at a rate of 2.3% per annum from July 20, 2018 until the date judgment is entered in this action. *See Paris Foods Corp.*, 2013 WL 12124514, at *5 (awarding prejudgment interest for a PACA claim at a rate established in invoices); *Del Monte Fresh Produce N.A., Inc., v. Another Produce Co.*, No. 3:08-CV-0883-L, 2008 WL 11349894, at *2 (N.D. Tex. July 24, 2008) (same); *see also May Produce Co., Inc. v. East West Imports, Inc.*, No. 3:09-CV-1383-L, 2009 WL 4884154, at *2 (N.D. Tex. Dec. 15, 2009) (awarding prejudgment interest to PACA claimant even though invoices did not call "for the payment of prejudgment interest").

### 4.    *Post-Judgment Interest*

Plaintiff also seeks post-judgment interest "on the total amount owing to [it] at the highest

rate permitted by applicable law . . . ." (doc. 13 at 15.) "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)); *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in district court."). "[D]istrict courts do not have the discretion to deny post-judgment interest on monetary judgments." *Paisano Capital*, 2019 WL 3239152, at *5 (citing *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017)). Accordingly, Plaintiff's request for post-judgment interest should be granted, and it should be awarded post-judgment interest at the applicable federal rate[5] from the date of judgment until it is paid in full. *See Paris Foods Corp.*, 2013 WL 12124514, at *5 (awarding post-judgment interest for PACA claim).

5.   *Attorneys' Fees*

Plaintiff additionally asks for attorneys' fees in an amount not less than $7,000.00, based on the inclusion of a provision for attorneys' fees in the invoices and the Order awarding it fees. (doc. 13 at 9, 11-13, 15.)

As noted, plaintiffs pursuing an action in federal court based on a defendant's failure to pay the Secretary of Agriculture's reparation award are entitled to recover reasonable attorneys' fees, "to be taxed and collected as part of the costs of suit." 7 U.S.C. § 499g(b); *see Mrs. Condies Salad Co., Inc.*, 858 F. Supp. 2d at 1220 (citing 7 U.S.C. § 499g(b)). Additionally, courts have allowed plaintiffs in PACA cases to recover attorney's fees when they are provided for by contract. *Eagle Eye Distrib., Inc.*, 2009 WL 4251105, at *7 (citing cases); *Ruby Robinson Co., Inc. v. Kalil Fresh Marketing, Inc.*, No. H-08-199, 2009 WL 3378419, at *1–2 (S.D. Tex. Oct. 16, 2009) (citing cases).

---

[5] The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.

When a party moving for default judgment seeks attorneys' fees, "it must prove both the amount of the fees and the reasonableness of the fees, subject to court inquiry." *Ctr. Capital Corp. v. M.B. Bender Co.*, No. A-09-CV-469-SS, 2009 WL 3834335, at *1 (W.D. Tex. Nov. 13, 2009) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)).

Plaintiff has alleged that it is pursuing this action as a result of Defendants' failure to pay the amount it is owed following the Secretary of Agriculture's Order, and it presents the Order in support of its allegations. (docs. 1 at 5-8; 13 at 8.) It also presents invoices of the transactions between it and Company, which include provisions stating that the buyer would be subject to paying all "costs of collection, including attorney's fees." (*See* docs. 1-2; 1-3;1-4; 20-1; 20-2.) Accordingly, it has shown that it is entitled to recover reasonable attorneys' fees. *See* 7 U.S.C. § 499g(b); *Eagle Eye Distrib., Inc.*, 2009 WL 4251105, at *7; *Ruby Robinson Co., Inc.*, 2009 WL 3378419, at *1–2.

The Attorney Affidavit lists the amount of time spent and work performed on this case. (doc. 13-2 at 2.) It states that through the date of the motion for default judgment, the attorney and his associate had each performed 20 hours of "work on matters relating to and involving" this case at a rate of $175.00 per hour, for a total amount of $7,000.00. (*Id.*) The Supplemental Affidavit affirms the amount of time spent and work performed on the case, as well as the billable rates for each attorney, and it states that Plaintiff had been billed a total amount of $7,616.60 in fees "for 52.6 hours of time relating to the prosecution of the [a]ction" at the time of its filing. (doc. 19 at 2.)[6] Both affidavits conclude that the attorneys' fees and expenses incurred in this action were

_____

[6] The supplemental affidavit specifies that the 52.6 hours of time worked "includes 7.30 hours preparing" the motion for default judgment. (doc. 19 at 2.)

"reasonable and were necessary for the type of matter represented in this [a]ction." (docs. 13-2 at 3; 19 at 3.) Plaintiff also provided attorney billing statements and a detailed billing report showing the attorneys' hourly rates, hours worked, and the type of work that was performed for this case. (doc. 19-1 at 2-17.)

Based on this evidence, "the Court finds that the time expended by the attorneys" and their hourly rates were reasonable, and "[n]othing indicates that any individual was billing for 'excessive, duplicative, or inadequately documented' time." *Paisano Capital*, 2019 WL 3239152, at *7 (citing *Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012)). Because Plaintiff has sufficiently proven "both the amount of the fees and the reasonableness of the fees," it should be awarded $7,616.60 in attorneys' fees. *Ctr. Capital Corp.*, 2009 WL 3834335, at *1 (citing *Hunt*, 770 F.2d at 148); *see Del Monte Fresh Produce*, 2008 WL 11349894, at *2 (citing cases) (awarding attorney fees to a PACA complainant based on the language in sales invoices).

### 6. *Court Costs*

Plaintiff also requests $838.80 in court costs. (docs. 13 at 13, 15; 19 at 2.)[7] Under Fed. R. Civ. P. 54(d)(1), a prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. The Supplemental Affidavit states that these costs were incurred for "court costs, service of process fees, and other expenses

---

[7] Although Plaintiff requests this amount as part of its request for attorneys' fees, its allegations show that this amount is for court costs only. (doc. 13 at 13, 15.)

associated with the prosecution of the [a]ction." (doc. 19 at 2.)  The billing reports show service of process fees of $438.80 and a filing fee of $400.00, amounting to $838.80.  (doc. 19-1 at 5, 7.)  "These are both reasonable and taxable under the law." *Paisano Capital*, 2019 WL 3239152, at *7. Plaintiff should also be awarded the $838.80 incurred for court costs.  *Id*.

### III. RECOMMENDATION

Plaintiff's motion for default judgment should be **GRANTED**, and Plaintiff should be awarded $30,386.35 in damages on its PACA claim, $500.00 for the PACA complaint filing fee, pre-judgment interest in the amount of $5,298.72 from August 1, 2017 to July 20, 2018, pre-judgment interest at a rate of 2.3% per annum from July 20, 2018 until the date judgment is entered in this action, post-judgment interest at the applicable federal rate from the date of judgment until paid in full, attorney's fees in the amount of $7,616.60, and court costs in the amount of $838.80.

**SO RECOMMENDED** on this 22nd day of August, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE